**CENTRAL TEXAS ICE CO. v. THOMAS.**

**No. 7450.**

Court of Civil Appeals of Texas. Austin.
May 7, 1930.

Rehearing Denied June 4, 1930.

Woodruff & Holloway, of Brownwood, for appellant.

Callaway & Callaway, of Brownwood, for appellee.

BAUGH, J.

On December 3, 1926, J. L. Thomas, who owned an ice plant in Brownwood, Tex., contracted in writing to sell same to L. F. Troxel for $90,000, payable $15,000 cash, the assumption by Troxel of Thomas' indebtedness to the Temple Trust Company, aggregating about $14,000, and that to the Baker Ice Machinery Company, aggregating about $13,000; both of which were secured by liens on said plant. The balance was to be paid by the execution of notes secured by a vendor's lien. On December 15, Thomas delivered to Troxel a deed to the premises and was paid the $15,000. At that time the notes of the Baker Ice Machinery Company, for brevity hereafter designated as the Baker Company, were in the hands of its attorney for collection, who filed suit thereon on December 18, and Troxel was compelled to pay, in addition to the principal and interest assumed by him, $1,000 attorney's fees, to prevent a foreclosure of the Baker Company lien on his plant.

This suit was brought by the Central Texas Ice Company, assignee of Troxel, to recover against Thomas said $1,000; for $100 on certain ice books, not here controverted; and for $6,000 damages for false and fraudulent representations as to an outstanding lease held by Schenecker Produce Company on a part of said plant for cold storage purposes. Trial was to the court without a jury, and judgment rendered in favor of appellant for $80, from which it has appealed.

The first proposition presented relates to the question of who was liable for said attorney's fees. The findings of fact of the trial court show substantially the following: At the time of the execution of said contract on December 3, Thomas represented to Troxel that none of the Baker Company notes were due, but that a part of same would mature the following spring. In fact all of them were then past due, same were placed in the hands of an attorney for collection on December 6; and written demand made upon Thomas for payment on December 7, a part of which letter read:

"As the attorney for the company, I have been informed that you have contracted to sell your ice plant covered by said lien to Mr. L. F. Troxel of Breckenridge, Texas. The company has no objection to the sale, provided they are paid before or at the time of the sale. The company will not release you until it is paid in full, nor will the company give permission to sell the plant until they are satisfied. * * *

"As to the ten per cent attorney's fees due on these notes, you will be treated right as to the amount we will demand in case we are not put to trouble in the collection of principal and interest."

A copy of this letter was sent to Troxel at Breckenridge, Tex. Troxel had no further communication either with Hendricks, the attorney, or with the Baker Company concerning said notes until after suit was filed thereon on December 18. The deed to the property from Thomas and wife was executed December 13, and delivered to Troxel December 15. In said deed Troxel assumed the Baker Company debt, particularly described therein, the deed reciting "the amount of said indebtedness unpaid and hereby assumed, being $12,-478.39." Said deed also contained the usual or standard warranty clause. At the time the deed was delivered the matter of the attorney's fees was discussed, but Troxel did not agree to pay same. The amount specified in the deed was the amount of the principal and interest then due.

There was testimony pro and con on the question of whether or not the attorney's fees were due on said notes at the time the deed was delivered. Though the letter of December 7 indicated that attorney's fees would be charged, there was testimony to the effect that if said notes were paid to the Baker Company at any time before said deal was closed, at the time it was closed, or immediately thereafter, no attorney's fees would be demanded. The evidence was not at all conclusive, either that attorney's fees were or that they were not due and payable as a part of the Baker Company's demand against Thomas at the time the deed was delivered. If the attorney's fees were then due, they constituted a demand against said property, Troxel having assumed specifically only the principal and interest on the Baker Company notes, which sum was definitely stated; and Thomas having warranted the title to said property as free from all incumbrances other than those named, Thomas would be liable under said warranty for whatever additional amount Troxel had to pay to clear said property of the incumbrances then existing. Kimmins v. McKelvey (Tex. Civ. App.) 12 S.W. (2d) 1085, 1086, and cases there cited.

If, on the other hand, such attorney's fees were not due when the deed was delivered, and none were to be charged Troxel in case he would pay off said Baker notes immediately thereafter; and if he failed to so pay same immediately after accepting said deed, and such failure caused the accrual of said attorney's fees after he had obtained title to the property; then Thomas would not be liable therefor under his warranty because such incumbrance was not outstanding at the time he conveyed the property.

The trial court did not find in his findings of fact whether said attorney's fees were in fact due at the time the deed was delivered. No objections were offered to the findings of fact, nor was there any request that he expressly find on that issue. His conclusion of law as announced was: "Since Troxel closed the deal with full knowledge as to the status of the notes, he took his chance as to having to pay the attorney's fee, and therefore the defendant is not liable for any part of the amount paid by L. F. Troxel to Baker Ice Machine Company, Inc."

This conclusion of law does not clarify the matter. It rather indicates that the trial court was of the opinion that, having full knowledge of the circumstances as to the Baker Company notes, Troxel should pay the attorney's fees whether same accrued before the deed passed, or whether they matured only upon the filing of suit on December 18. If, however, a proper judgment was rendered, sustained by the evidence, though based upon an erroneous conception of the law, it should be sustained.

There being no finding made and none requested as to when said attorney's fees accrued, and judgment having been rendered against appellant on his right to recover same, which depended upon whether same accrued before or after the deed passed, it will be presumed in support of the trial court's judgment that he found that such attorney's fees did not accrue until after Troxel accepted the deed to said property. Such is the general presumption to be indulged in support of the trial court's judgment.

Appellant next complains of the admission of the testimony of Thomas as to the contents of conversations between him and Rasmussen, manager of the Baker Company, Troxel not being present, between December 3 and December 15, concerning the attorney's fees on the Baker Company notes. We do not sustain this contention. Much of these conversations was communicated to Troxel by Thomas before the deal was closed. Whatever was communicated to him by Thomas prior to his acceptance of said deed was clearly admissible. But conversations between Thomas and Rasmussen which were not communicated to Troxel were not admissible. The trial being to the court, and both competent and incompetent testimony having been admitted, it will be presumed, in the absence of a showing to the contrary, that the trial court based his judgment upon the competent testimony.

Nor do we sustain appellant's third proposition. The trial court found that Thomas misrepresented to Troxel the status of the Schenecker Produce Company lease. The damage sought was obviously based upon appellant's contention that the portion leased to Schenecker Produce Company had a rental value of $350 per month, whereas their lease contract provided a rental of $250

per month, and the fact that Schenecker Produce Company had a five-year lease instead of a one-year lease terminable in the spring of 1927, as stated by Thomas. It is true that where a vendor has perpetrated a fraud upon a vendee, resulting in his damage, the measure of that damage is the difference between the actual value of the property at the time of the purchase, and the price paid for it. The trial court found in this case that there was no damage. There was testimony of Morgan and Troxel that with the Schenecker lease on said property for which they paid $90,000, it was worth only $84,000, or $85,000. It is obvious, however, that this testimony was based upon their estimate that said rental value was $350 per month, or $100 per month more than appellant received under said lease, which in a five-year period amounted to $6,000, and thus reduced the value of the property below the sum Troxel paid for it by that amount. But the trial court expressly found that the $250 per month was a fair rental value, and that there was testimony to sustain that finding. Though there was no other testimony as to the actual value of the plant at the time, the basis upon which their estimated value was predicated having fallen, under adverse testimony, their estimated value must likewise fall with it.

The judgment of the trial court is affirmed.

Affirmed.